**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **KLN STEEL PRODUCTS COMPANY LLC,** | § | **CASE NO. 11-12855** |
| **DEHLER MANUFACTURING CO.,** | § | **CASE NO. 11-12856** |
| **FURNITURE BY THURSTON, AND** | § | **CASE NO. 11-12858** |
| **4200 PAN AM LLC,** | § | **CASE NO. 11-13154** |
| | § | **Jointly Administered Under** |
| **DEBTORS.** | § | **CASE NO. 11-12855 - CAG** |

**DEBTORS' OBJECTION TO MOTION OF MACROLEASE CORPORATION FOR ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE CLAIM AND TO COMPEL PERFORMANCE OF POST-PETITION OBLIGATIONS AND ASSUMPTION OR REJECTION OF UNEXPIRED LEASE FOR PERSONAL PROPERTY**

COMES NOW KLN Steel Products Company, LLC, ("KLN"), Dehler Manufacturing Co., Inc. ("Dehler"), Furniture by Thurston, Inc. ("FBT"), and 4200 Pan Am, LLC ("4200") (collectively, the "Debtors"), and respectfully file this objection to Macrolease Corporation's Motion for Allowance and Payment of an Administrative Claim and to Compel Performance of Post-Petition Obligations and Assumption or Rejection of Unexpired Lease for Personal Property (the "Motion"), and in support thereof would respectfully show the Court as follows:

## I. STATEMENT OF FACTS

1. On November 22, 2011, KLN, Dehler, and FBT filed their voluntary Chapter 11 petitions (the "Petition Date") in the above-styled and numbered bankruptcy cases (the "Bankruptcy Cases"). On November 23, 2011, the Court entered an order authorizing joint administration of the KLN, Dehler and FBT reorganization cases.

2. On December 31, 2011, 4200 filed its voluntary Chapter 11 petition.

3. On or about June 30, 2009, the Debtor entered into an Equipment Lease Agreement with Quail Leasing Corp. (the "Agreement"), pursuant to which the Debtor leased a "used Stefani Edgebander with Return Conveyor" (the "Equipment") from Quail Leasing Corp. for a term of 48 months. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**. According to the express terms of the Agreement, the Agreement is "IRREVOCABLE AND MAY NOT BE CANCELLED TERMINATED OR REVOKED BY LESSEE DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER." *See* Exhibit 1, § 3.

4. The remaining balance due under the Agreement is $40,120.97. According to the February 12, 2010 appraisal performed for the Debtor by GoIndustry DoveBid, the Equipment has been given a fair market value of $85,000. A true and correct copy of the pertinent page of said appraisal is attached hereto as **Exhibit 4**.

5. In conjunction with the Agreement, and also on or about June 30, 2009, Quail Leasing Corp. and KLN entered into a Purchase Option agreement whereby Quail Leasing Corp. granted KLN the option to purchase the Equipment for one dollar upon the expiration of the Agreement. A true and correct copy of the Purchase Option is attached hereto as **Exhibit 2**.

6. On or about June 30, 2009, Quail Leasing Corp. assigned to Macrolease Corporation all of its rights regarding the transaction with KLN for the Equipment. *See* Notice of Assignment and Confirmation, a true and correct copy of which is attached hereto as **Exhibit 3**.

## II. SUMMARY OF ARGUMENT

7. The Agreement is not a true lease but is a financing agreement. All of the relief requested by Macrolease in the Motion depends on the Agreement being categorized as a lease. Therefore, the Court should deny Macrolease's request for allowance and payment of an

administrative claim and its request to compel performance under, and acceptance or rejection of, the Agreement.

## III. ARGUMENT

### A. The Agreement is a Financing Agreement

8. The Agreement is not a true lease. Whether the Agreement constitutes a "true lease" or is a disguised financing agreement is governed by state or local law. *In re Triplex Marine Maintenance, Inc.*, 258 B.R. 659, 664 (Bankr. E.D. Tex. 2000).

9. According to *Triplex Marine*, in Texas, a two part test is applied to determine whether a transaction is in fact a financing agreement: (1) the court must determine whether a finding of a security interest is compelled by TEX. BUS. & COM. CODE ANN. §1.201(37) (Vernon 1994)[1]; and if not, (2) the court must examine all facts to determine the economic realities of the transaction. *Id.* at 669. The first part of the test, called the "Bright Line Test" is determinative in this case. If the Bright Line Test is satisfied, "the inquiry comes to an end – such leases constitute security agreements as a matter of law." *Triplex Marine*, 258 B.R. at 669.

10. The Bright Line Test looks to the Texas Business and Commerce Code, section 1.203, and will find a security interest where:

> …the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and: …
>
> (iv) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

*See Triplex Marine*, 258 B.R. at 668 (citing the prior version of this statute).[2]

---

[1] Section 1.201(37) has been moved and is now codified at TEX. BUS. & COM. CODE ANN. §1.203 (Vernon Supp. 2005), and is virtually identical to the former section.

[2] Section 1.203 contains a total of four non-exclusive second elements for the Bright Line Test, but because the fourth one is determinative in this case, only that fourth element is described herein.

11. In *Triplex Marine*, the court found that the first element of the Bright Line Test was satisfied because the pertinent lease contained a term (called the "hell or high water" clause by the court), which provided that the lessee could not cancel the lease at any time for any reason. Similarly in this case, the Agreement requires KLN to make monthly payments for the term of the Agreement, and the Agreement contains an express provision, in all capital letters, providing that the Agreement is "IRREVOCABLE AND MAY NOT BE CANCELLED TERMINATED OR REVOKED BY LESSEE DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER." *See* Exhibit 1, § 3. Therefore, the Agreement passes the first element of the Bright Line Test.

12. In *Triplex Marine*, the court found that the second element of the Bright Line Test was satisfied because the agreement in question contained a purchase option for nominal additional consideration. In that case, the nominal additional consideration was the greater of 10% of the lessor's cost of the equipment or the fair market value. *Triplex Marine*, 258 B.R. at 670 (citing several other cases finding that such a 10% purchase option was nominal, including *In re Bevis Co., Inc*., 201 B.R. 923, 926 (Bankr. S.D. Ohio 1996)(finding option price of 10% of cost of equipment to be nominal), *In re Phoenix Pipe & Tube*, 154 B.R. 197, 200 (Bankr. E.D. Pa. 1993)(same), and *In re Super Feeders, Inc*., 236 B.R. 267, 270 (Bankr. D. Neb. 1999)(finding a fixed option price of 5% of the original purchase price to be nominal while recognizing that a purchase option price of less than 25% of the original purchase price constitutes evidence of a security interest.)).

13. In this case, the purchase option price was significantly less than any relevant measure of value for the Equipment and was an extremely small percentage (0.00108%) of the total lease payments. *Triplex Marine*, 258 B.R. at 670 ("[w]hen the option price is a relatively low percentage of the total lease payments, this indicates nominal consideration."). A one dollar purchase option makes clear that Macrolease has not retained any residual interest in the Equipment in this case. *See In re*

*Grubbs Constr. Co.*, 319 B.R. 698, (Bankr. M.D. Fla. 2005) (noting that one dollar option cases are simple and "do not necessitate the analysis required in more artfully drafted leases"). One dollar is plainly a nominal fee for the purchase of the Equipment. Therefore, the Agreement passes the second element of the Bright Line Test and the Agreement is a security agreement as a matter of law. *See Triplex Marine*, 258 B.R. at 669.

**B. Macrolease is Not Entitled to its Requested Relief Where No Lease Exists.**

14. Macrolease first requests that this Court issue an order pursuant to Section 365(d)(2) compelling the Debtors to assume or reject the Agreement. Obviously, where there is no lease, Section 365(d)(2) is inapplicable and the requested relief is likewise inapplicable. *Id.*

15. Macrolease next seeks relief pursuant to Section 365(d)(5), regarding the performance of post-petition lease obligations. Similarly to the above issue, where Macrolease and the Debtors are not bound by an unexpired lease of personal property, relief under Section 365(d)(5) is inapplicable in this case.

16. Finally, Macrolease seeks allowance and payment of an administrative claim, pursuant to Sections 503(b) and 365(d)(5), for the "unsatisfied lease payments that accrued post-petition." *See* Motion, ¶ 18. However, because the Agreement at issue is not an "unexpired lease of personal property," as contemplated in Section 365(d)(5), then the relief sought by Macrolease is simply inapplicable in this case.

**C. Macrolease is Sufficiently Protected.**

17. Although Macrolease has not requested or plead facts to support a request for adequate protection, the Debtors would object to any such relief in this case. The appraisers have placed a fair market value on the Equipment of $85,000, and the scheduled remaining balance under the Agreement is $40,120.97. Therefore, this debt is fully secured and any additional adequate protection would be

inappropriate at this time. *E.g. In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1988). Debtors currently anticipate that, given the high collateral to loan balance ratio, the equipment will be retained and the claims of Macrolease will (if allowed) be treated as fully secured claims under the terms of a plan. At this juncture, however, Debtors appropriately refuse to pay current debt payments when those funds can be better deployed to increasing their profitability, sales and value as a going concern.

## IV. CONCLUSION

Debtors respectfully pray that upon notice and hearing that the Court determine that the Equipment Lease Agreement between KLN and Macrolease is not a true lease, but is a secured claim (if allowed), and that therefore Macrolease's requested relief is inapplicable in this case and should be denied in all respects, and for such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 - FAX

By: */s/Jack E. Skaggs*
Patricia B. Tomasco
State Bar No. 01797600
(512) 236-2076 – Direct Phone
(512) 691-4438 – Direct Fax
Email address: ptomasco@jw.com

Jack E. Skaggs
State Bar No. 24051345
(512) 236-2343 – Direct Phone
(512) 391-2182 – Direct Fax
Email address: jskaggs@jw.com

J. Scott Rose
State Bar No. 17252800
112 E. Pecan Street, Suite 2400

San Antonio, Texas 78205
(210) 978-7700 (Telephone)
(210) 978-7790 (Facsimile)
Email address: srose@jw.com

**COUNSEL FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of January 2012, a true and correct copy of the foregoing has been served either electronically or via United States mail, postage prepaid, to the following, and upon the parties listed on the attached matrix.

U.S. Trustee
903 San Jacinto, Room 230
Austin, TX 78701

Jay H. Ong
Jonathan L. Howell
Munsch Hardt Kopf & Harr, P.C.
401 Congress Ave., Suite 3050
Austin, Texas 78701

/s/ *Jack E. Skaggs*
**Jack E. Skaggs**